MCKENZIE CZABAJ, AZ # 036711
DAVID A. CHAMI, AZ # 027585
DANIEL COHEN, # 032552
**THE CONSUMER JUSTICE LAW FIRM**
8245 N. 85th Way Scottsdale,
Arizona 85258
T: (480) 626-2346
E: mczabaj@cjl.law

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Busse,<br>    Plaintiff,<br>-against-<br>Accurate Background, LLC.<br>    Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

  Plaintiff, Michael Busse (Plaintiff" or "Mr. Busse"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant Accurate Background, LLC ("Defendant" or "Accurate") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq*.

**JURISDICTION AND VENUE**

  1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

  2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

  3. Defendant regularly transacts business within the District. Defendant regularly directs business at the District. Defendant voluntarily and purposefully avails itself of the protections of the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, Michael Busse, is a natural person who resides in Pinal County, Arizona. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

6. Defendant is a California limited liability company doing business throughout the United States, including in the State of Arizona. Accurate operates a principal place of business located at 7515 Irvine Center Drive, Irvine, California 92618 and is organized in California. Defendant may be served through its registered agent, c/o C T Corporation System located at 330 N. Brand Boulevard, Suite 700, Glendale, California 91203.

7. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

### Case No. S1100CR201902354

9. On or about October 8, 2019, Plaintiff was charged with one count of weapon misconduct for knowingly possessing a defaced deadly weapon.

10. On or about November 10, 2019, Plaintiff pled guilty to "Misconduct Involving Weapons, a Class 6 Undesignated Felony" and was placed on probation for a period of eighteen months.

11. Under Arizona law, an undesignated felony may be designated as a misdemeanor upon successful completion of probation.

12. As of October 2020, Plaintiff had successfully completed eleven months of his eighteen-month probationary period.

13. Plaintiff had also made significant strides towards rehabilitation, including maintaining a stable residence, finding employment, and making efforts towards paying his fines and fees.

14. On or about October 14, 2020, Plaintiff was terminated and discharged from probation.

15. On or about October 15, 2020, it was ordered that Plaintiff's "conviction, previously undesignated, is hereby designated a Class 1 Misdemeanor."

16. Accordingly, Plaintiff was **not** convicted of a felony.

**Defendant's Reporting of Case No. S1100CR201902354**

17. In or around mid-October 2022, Plaintiff applied for an entry level corporate sales position for Amazon Web Services, Inc. ("Amazon") through a staffing services company, Insight Global, LLC ("Insight").

18. Plaintiff wanted to work for Amazon because it was an advantageous opportunity. Specifically, Plaintiff liked that the position was remote, offered benefits such as health insurance, bonuses, and more, did not require door-to-door sales, and was only forty hours per week.

19. Plaintiff successfully completed the interview process, which was a multi-tiered interview process, in or around mid-October 2022.

20. During the interview process, Plaintiff also disclosed his criminal history, which was limited to a single misdemeanor offense.

21. The interviewers reassured Plaintiff that the misdemeanor record was not an issue and that only violent felony offenses operated to disqualify a candidate.

22. Plaintiff felt that the interview process went very well; he was told he was a perfect candidate and exactly what Amazon was looking for, especially given his past managerial and sales experience.

23. On or about October 19, 2022, the day after the final interview, Insight extended a job offer to Plaintiff for the Amazon position, which was conditional pending Plaintiff's background check.

24. Plaintiff was elated and signed and returned the offer letter on October 22, 2022.

25. Plaintiff did not anticipate having any issues with his background check as Amazon had already assured him that the misdemeanor record would not disqualify him for the position, and therefore Plaintiff consented to the background check.

26. On or about October 17, 2022, Amazon and/or Insight ordered an employment purposed consumer report ("background report" or "consumer report") about Plaintiff from Defendant.

27. On or before October 24, 2022, Defendant sold a background report about Plaintiff to Amazon and/or Insight.

28. Within that background report, Defendant inaccurately published to Amazon and/or Insight that Plaintiff was convicted of felony assault.

29. On or about October 24, 2022, Insight called Plaintiff and informed Plaintiff that his offer for the Amazon position was revoked based on the results of his background check.

30. Plaintiff was embarrassed and confused because he had already confirmed that his misdemeanor record would not disqualify him from employment with Amazon.

31. During that call, Insight specifically cited a felony assault conviction which was reported on his background report as the basis for disqualification from employment with Insight/Amazon.

32. Upon hearing that Defendant included a felony assault conviction on his background report, Plaintiff was very upset, confused, and distressed.

33. Plaintiff immediately called Defendant and requested a copy of the background report that Defendant sold to Amazon and/or Insight about him. During that same call, Plaintiff also disputed any criminal record that was reported as a felony conviction.

34. Plaintiff also disputed with Defendant by email.

35. On or about October 24, 2022, Defendant received Plaintiff's dispute of the inaccurate information and initiated an investigation of the same.

36. On or about that same day, Defendant emailed to Plaintiff a copy of the background report that was sold about him to Amazon and/or Insight.

37. Upon review of the background report sold by Defendant to Amazon and/or Insight, Plaintiff was shocked, dismayed, and distressed to learn that Defendant had indeed reported that Plaintiff was convicted of felony assault.

38. Specifically, Defendant reported that Plaintiff was convicted of felony assault in Pinal County, Arizona, and referenced case number S1100CR201902354.

39. Plaintiff recognized the case number as his own case, but the charge and charge type were woefully and wholly inaccurate.

40. The entry indicated that Plaintiff was convicted of a *felony* charge for *"Assault with a Deadly Weapon,"* with a disposition date of December 9, 2019.

41. Plaintiff has **never** been convicted of "Assault with a Deadly Weapon."

42. And certainly, Plaintiff has **never** been convicted of **felony Assault with a Deadly Weapon**.

43. A cursory review of the public court records for Case No. S1100CR201902354, clearly establishes that Plaintiff was convicted of a misdemeanor for "Wpn Miscndct - Knowingly Poss Defaced Deadly Wpn."

44. Plaintiff previously disclosed to Amazon and Insight the misdemeanor conviction for Weapon Misconduct Knowingly Possessing a Defaced Deadly Weapon.

45. Amazon told Plaintiff that the aforementioned misdemeanor conviction would not disqualify him for employment.

46. Defendant's reporting that the aforementioned conviction was for felony Assault with a Deadly Weapon is not only patently inaccurate, but also flagrantly wrong.

47. For at least a week after learning of Defendant's inaccurate reporting about him, Plaintiff repeatedly called and emailed his recruiter to follow up on the job and plead for her to believe him that he was not convicted of any felony much less the one reported by Defendant.

48. During that same timeframe, Plaintiff also called Amazon's and Insight's corporate offices to follow up on the job and further plead his case.

49. Plaintiff also emailed the project manager that interviewed him on behalf of Amazon to continue to make his case for being hired despite Defendant's inaccurate reporting. Plaintiff event went so far as to call the Apache Junction police department, the Federal Bureau of Investigation, Homeland Security, and Pinal County. Plaintiff was desperate to have the report corrected, but also to discern how exactly it is that Defendant so inaccurately reported the record in question to begin with.

50. Plaintiff was consumed by the inaccurate reporting, wondering if and when it would be corrected, how it came to be in the first place, whether it would plague him again in the future.

51. On or about October 25, 2022, Plaintiff purchased a certified copy of his court records which proved that the record in question was a misdemeanor conviction for misconduct involving weapons.

52. All in all, over the span of a few days Plaintiff called and emailed Defendant well over a dozen times.

53. Plaintiff repeatedly informed Defendant, by phone and email, that it was inaccurately reporting his criminal record and that Defendant's inaccurate reporting was costing him a position with Amazon that he very much wanted.

54. During many of the calls to Defendant, Plaintiff was transferred to multiple representatives, placed on hold for lengthy periods of time.

55. On at least one occasion, Plaintiff requested to speak to a manager and was placed on hold for almost an hour and a half before he eventually gave up and ended the call.

56. On or about October 26, 2022, Insight called Plaintiff.

57. During that call, Insight informed Plaintiff that if Defendant did not correct its reporting by October 28, 2022, Insight would offer the Amazon job to another candidate.

58. On or about October 27, 2022, Defendant emailed Plaintiff his dispute results.

59. Defendant conceded its inaccurate reporting and issued to Plaintiff a corrected background report.

60. The revised report correctly indicated that Plaintiff's record was a misdemeanor for misconduct involving weapons.

61. Unfortunately, Defendant's correction was too little too late - the damage was already done.

62. On or about October 28, 2022, Insight called Plaintiff and informed him that it had already hired another candidate in the position that was previously offered to him.

63. After the report was corrected, Plaintiff called his recruiter three or four times to discuss working for Amazon but was never able to connect with the recruiter. Further, the recruiter never returned any of Plaintiff's calls.

64. Plaintiff was deeply ashamed and embarrassed. Plaintiff felt that Amazon and Insight did not want anything to do with him due to Defendant's inaccurate reporting.

65. Plaintiff reasonably believed that but for Defendant's inaccurate reporting, Plaintiff would have been gainfully and successfully employed at Amazon through Insight.

66. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

67. Defendant reported that Plaintiff was convicted of Felony Assault with a Deadly Weapon despite public court records establishing that the record in question was a Misdemeanor conviction for Misconduct Involving Weapons.

68. Instead of employing reasonable procedures, as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

69. Upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

70. Defendant is aware that charges are often dropped, changed, amended, or dismissed after they are originally filed against a consumer.

71. Defendant is also aware that criminal information provided by third-party vendors is often inaccurate or incomplete.

72. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

73. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

74. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with reliable third-party vendors.

75. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

76. Upon information and belief, Defendant has been sued under the FCRA by consumers in the past for reporting criminal records in an inaccurate, incomplete, and/or materially misleading way.

77. Therefore, Defendant has actual notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

78. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

79. Despite knowing that its procedures are unreasonable, Defendant recklessly and knowingly fails to employ procedures that assure the maximum possible accuracy of consumer information compiled and published in its consumer reports.

80. Upon information and belief, Defendant does not independently investigate the information it buys from third-party vendors before including it in consumers' background reports.

81. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

82. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

83. Defendant knows that its services are used to make significant consumer decisions.

84. Upon information and belief, Defendant is aware that its initial decisions regarding employment applications are often adopted by the employer reviewing the consumer report.

85. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

86. As a direct result of Defendant's conduct, Plaintiff lost the job opportunity with Amazon.

87. Plaintiff was embarrassed and humiliated to have information disseminated about him indicating that he was a convicted felon.

88. Plaintiff was also embarrassed and humiliated to have to tell his family and friends that he lost the job with Amazon after they were all so proud of him for getting the job offer.

89. As a direct result of Defendant's conduct, Plaintiff suffered from significant stress, frustration, anxiety, and emotional distress.

90. As a direct result of Defendant's inaccurate reporting, Plaintiff was often consumed by stress and fear when trying to fall asleep. Consequently, Plaintiff suffered from sleepless nights.

91. Defendant's conduct also wasted Plaintiff's time as he was forced to dispute with Defendant and communicate with Amazon and Insight, the FBI, Homeland Security, the police department, and the court.

92. Plaintiff's money was also wasted as he had to purchase a certified copy of his court records.

93. As a direct result of Defendant's conduct, Plaintiff felt hopeless and feared that he would be unemployed as he resigned from his previous job after accepting the position at Amazon.

94. Instead of being able to advance his career, Defendant's conduct caused Plaintiff to have to start all over again with his previous employer. Plaintiff's team at his former job was reassigned, and Plaintiff was forced to accept a lower-level position that paid much less or face unemployment.

95. As a direct result of Defendant's conduct, Plaintiff is making less, facing financial insecurity, and has had to borrow money from family and friends in order to meet his financial obligations.

96. As a direct result of Defendant's conduct, Plaintiff has suffered actual damages including but not limited to: damage to his reputation, stress, wasted time, sleepless nights, job loss, financial insecurity, and emotional distress, including mental anguish, frustration, humiliation, embarrassment, sadness; and other losses that are continuing in nature.

## COUNT I

### Defendant's Violations of 15 U.S.C. § 1681e(b)

97. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

98. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681a(d).

99. In the parlance of the FCRA, background reports for employment purposes are "consumer reports."

100. The FCRA provides a number of protections for job applicants who are subject to background reports.

101. The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

102. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

103. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

104. Specifically, Defendant failed to establish, maintain, and/or follow procedures to prevent it from inaccurately reporting a felony conviction in Plaintiff's background report.

105. Defendant failed to establish, maintain, and/or follow procedures to prevent it from reporting the charge and charge type that Plaintiff was actually convicted of.

106. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered actual damages which have been further described above.

107. Defendant's violations of the FCRA were willful and knowing. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

108. Alternatively, Defendant's violations of the FCRA were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

109. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o.

**TRIAL BY JURY**

110. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Michael Busse, respectfully requests judgment be entered against Defendant, for the following:

| | | |
|---|---|---|
| A. | Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o; |
| B. | Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o; |
| C. | Punitive damages pursuant to 15 U.S.C. § 1681n; |
| D. | Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o; |
| E. | Any pre-judgment and post-judgment interest as may be allowed under the law; and |
| F. | Other and further relief as the Court may deem just and proper. |

DATED: January 5th, 2023

Respectfully submitted,

**THE CONSUMER JUSTICE LAW FIRM**

*/s/ McKenzie Czabaj*

McKenzie Czabaj, AZ # 036711
David A. Chami, AZ # 027585
Daniel Cohen, AZ #032552
8245 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2346
E: mczabaj@cjl.law

*Attorneys for Plaintiff*
*Michael Busse*